```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **JARED VODANOVICH, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-4191**<br>**REF: ALL CASES** |
| **BOH BROTHERS CONSTRUCTION CO., L.L.C., ET AL.** | **SECTION "B"(2)** |

## ORDER AND REASONS

**I.   NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Plaintiffs', Leslie Sims, Jr., et al, (the "Sims Plaintiffs") "Motion to Vacate or Modify the Court's Order of October 30, 2014 (Doc. 230)," which seeks vacatur under Fed. R. Civ. P. 60(b) of the Court's award of costs to Liaison Counsel, Levee Litigation Liaison Counsel, and MR-GO Litigation Liaison Counsel ("Liaison Counsel"). (Rec. Doc. 246). Liaison Counsel oppose the motion and both parties have provided extensive briefing on the issues presented. (See Rec. Docs. 249, 253, 255). For the reasons that follow, **IT IS ORDERED THAT** the Sims Plaintiffs' Motion is **DENIED**.

**II. FACTS AND PROCEDURAL HISTORY**

This matter concerns a consolidated class action brought on behalf of a large number of plaintiffs stemming from property damage incurred in the wake of Hurricane Katrina. The facts underlying the initial cause of action are well-known to the Court and parties and need not be reiterated in the context of

1

the instant motion which concerns itself with post-settlement administration.

On September 24, 2009, an original limited fund settlement was approved by final order and judgment filed in Master Case No. 05-4182. (See Rec. Doc. 31).[1] That judgment was appealed to the United States Fifth Circuit Court of Appeals, which court reversed the judgment, finding that the original settlement was not "fair reasonable and adequate under Rule 23(e)" on a number of bases. *See In Re Katrina Canal Breaches Litigation*, 628 F. 3d 185 (5th Cir. 2010). Upon remand, various of the actions associated with the canal breach litigation were consolidated with the instant action, No. 05-4191, and re-allotted to this section of the Court. Following extensive intervening hearings and the appointment of a Special Master, this Court ultimately approved a second limited fund settlement by way of final judgment on November 18, 2013. (See Rec. Doc. 216). That judgment provided, in pertinent part:

> (17) The Court approves the Common Benefit Cap as set forth in Paragraph 11(d) of the Distribution Protocol. Accordingly, upon the Effective Date of Class Settlement and the subsequent request of the Special Master the Court will set a deadline for Class Counsel to file applications for reimbursement of common benefit costs and expense and for other counsel to file applications for common benefit costs, fees

---

[1] At that time, the matter had not yet been allotted to the undersigned's docket; the initial approval order was issued by Judge Stanwood R. Duval in Section "K" of this Court.

>     and/or expenses, provided that the aggregate
>     total of all common benefit costs, fees
>     and/or expenses that may be paid from the
>     Escrowed Funds shall not exceed forty
>     percent (40%) of the aggregate common
>     benefit costs, fees and expenses as
>     determined by the Court upon review of said
>     applications, nor shall it exceed the Common
>     Benefit Cap of Three Million Five Hundred
>     Thousand Dollars ($3,500,000.00).

(See Rec. Doc. 216 at 9). On July 25, 2014, the Court granted the Special Master's Motion to Recognize Effective Date of Settlement. (Rec. Doc. 222). Following approval of various requests by the Special Master for release of funds concerning, *inter alia*, the approval of a settlement proof-of-claim form and payment to vendors participating in the administration of the settlement (See, e.g., Rec. Docs. 226, 229), on October 13, 2014, Liaison Counsel filed a "Motion for Award of Costs and Expenses" (Rec. Doc. 227). That motion sought release of $3,500,000.00 in Escrowed Funds for disbursal among the various members of the Levee Litigation and MR-GO Litigation Groups, and was noticed for submission on October 29, 2014. (Rec. Doc. 227-6). The Court held a hearing on the motion on the same date and, the following day, issued an Order and Reasons approving the Motion for Award of Costs and Expenses. (Rec. Doc. 230). A final judgment reflecting the same was entered on November 3, 2014, in which the Court encouraged the parties to come to an agreement as to how the monies would be divided among the two groups and

their respective individual members. (Rec. Doc. 231). The Court warned that it reserved the right, in the event the parties failed to reach such an agreement, to appoint the Special Master to handle allocation of the award, whose fees and expenses would be paid out of the same $3,500,000.00 fund. (Rec. Doc. 231 at 2).

On December 1, 2014, Liaison Counsel filed a "Motion for Payment of Non-Taxable Litigation Costs," informing the Court that the Levee and MR-GO Litigation Groups had agreed as to how the monies would be divided between the groups: $1,452,200.00 to the Levee Litigation Group and $2,047,800.00 to the MR-GO Litigation Group. (Rec. Doc. 232 at 1). Importantly, that motion noted that Daniel E. Becnel, Jr., a member of the Levee Litigation Group, asserted a claim to $50,000.00 of funds destined for the MR-GO Litigation Group, and therefore objected to disbursal of those funds. (Rec. Doc. 232 at 1-2). In light of Mr. Becnel's objection, the Court received briefing on the disputed $50,000.00 in funds. (See Rec. Docs. 234, 235, 239, 240, 241, 244). The Court has taken that issue under advisement, but, in light of the absence of any objections of record to release of all but the contested $50,000.00, on December 12, 2014, following the lapse of the period for timely opposition, the Court ordered the Escrow Agent to make payment of $1,452,200.00 to the Bruno & Bruno LLP Trust Account on behalf

4

of the Levee Litigation Group and $1,997,800.00 to the Domengeaux Wright Roy & Edwards Trust Account on behalf of the MR-GO Litigation Group. (Rec. Doc. 242 at 2).

On December 22, 2014, James K. Irvin filed the instant "Motion to Vacate Order on Motion for Release of Funds" on behalf of the Sims Plaintiffs. (Rec. Doc. 246).[2] As discussed fully below, Mr. Irvin contends the Sims Plaintiffs were not afforded an opportunity to file an application for common benefit, costs, fees, and/or expenses and that the Court's order should therefore be vacated in order to allow them to file such an application. (Rec. Doc. 246). Liaison Counsel oppose this request, and both sides have submitted briefing on the issue. (See Rec. Docs. 246, 249, 253, 255).

**III. CONTENTIONS OF MOVANT**

Counsel for the Sims Plaintiffs, Mr. Irvin, argues that when this matter was consolidated and transferred to the *Vodanovich* docket, No. 05-4191, he was somehow deleted from the docket sheet and therefore no longer received notice of filings in the record via the CM/ECF system. (See Rec. Doc. 246 at 2). Because the Sims Plaintiffs were one of two groups who opposed approval of the original limited fund settlement in 2009, and whose efforts partly contributed to the reversal of that approval on appeal, Mr. Irvin contends the Sims Plaintiffs

---

[2] The Court notes that this filing occurred more than two months after the initial Motion for Award of Costs filed by Liaison Counsel (Rec. Doc. 227).

5

should be given an opportunity to file an application for common benefit and award of costs and fees related to those efforts. (Rec. Doc. 246 at 2). Mr. Irvin argues the Sims Plaintiffs planned to submit such an application, but that they had no notice of Liaison Counsels' Motion for Release of Funds, or the Court's subsequent order granting that Motion, until the week of December 15, 2014, due to his deletion from the docket sheet in this matter. *Id.* The Sims Plaintiffs argue that the Court's Final Judgment approving the second limited fund settlement (Rec. Doc. 216) indicated that the Court would fix a deadline for the filing of such applications, following the effective date of the settlement. Mr. Irvin argues that although he was not receiving notifications via CM/ECF, he was "periodically checking" the *Vodanovich* docket and never discovered an entry fixing application deadlines following the Court's recognition of the effective date of settlement on July 25, 2014. (See Rec. Doc. 222). Accordingly, Mr. Irvin assumed there remained time in which to file such an application.

**IV. CONTENTIONS OF OPPONENTS**

Liaison Counsel oppose the Sims Plaintiffs' Motion on the following grounds. First, Liaison Counsel note that the Sims Plaintiffs fail to cite any legal authority for vacatur of the Court's Order in their motion. (Rec. Doc. 246). Assuming for purposes of argument that they seek relief under Fed. R. Civ. P.

6

60(b), however, Liaison Counsel argue the Sims Plaintiffs have shown neither "mistake, inadvertence, surprise, or excusable neglect" for purposes of relief under Rule 60(b)(1), nor "extraordinary circumstances," as required under jurisprudence applying Rule 60(b)(6). (See Rec. Doc. 249 at 4)(citing *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 862 (E.D. La. Sep. 4, 2012)).

Second, Liaison Counsel argue that John J. Cummings, III, who is listed as "Lead Attorney/Attorney to be Noticed" for the Paul Plaintiffs on the *Vodanovich* docket, and therefore had actual notice of the contested filings, served as of-counsel/co-counsel for the Sims Plaintiffs. (See Rec. Doc. 249 at 2). In support of this contention, Liaison Counsel note that the Complaint for declaratory judgment originally filed in the *Sims* docket was submitted by Mr. Cummings and that every objection in that matter, to which the Sims Plaintiffs were a part, was submitted by Messrs. Irvin and Cummings together. (Rec. Doc. 249 at 7). Accordingly, Liaison Counsel argue there is sufficient reason to believe that Mr. Cummings serves as of-counsel/co-counsel to the Sims Plaintiffs, and his knowledge of the disputed Motion for Award of Costs is therefore imputable to Mr. Irvin as co-counsel and the Sims Plaintiffs as clients. (Rec. Doc. 249 at 8).

7

Third, Liaison Counsel argue, even if there are insufficient grounds to conclude that Mr. Cummings serves as co-counsel to Mr. Irvin, the latter still has not shown that he did not receive notice of Liaison Counsel's Motion, or that he has not waived his allegation that he did not receive such notice. (See Rec. Doc. 249 at 9). Liaison Counsel argue the Sims Plaintiffs' memorandum in support of their Motion to Vacate indicates that Mr. Irvin was aware that this matter was consolidated with the *Vodanovich* docket and that he was aware of the Court's Final Judgment of November 18, 2013, which approved the second limited fund settlement (to the extent he claims the Sims Plaintiffs made a decision not to oppose that approval). (Rec. Doc. 249 at 9). Because the Final Judgment was entered over ten months prior to Liaison Counsel's Motion, of which Mr. Irvin claims he had no notice, Liaison Counsel contend he has waived his argument concerning notice. Further, Liaison Counsel argue Mr. Irvin's failure to contact the Clerk of Court or Liaison Counsel when he knew he was no longer receiving CM/ECF notifications from the *Vodanovich* docket represents gross carelessness and cannot amount to the sort of "excusable neglect" permitted under Rule 60(b)(1). (See Rec. Doc. 249 at 9-10).

Fourth, Liaison Counsel argue the likelihood of success on any application for common benefit by the Sims Plaintiffs is

small, because the "enhanced costs" argument asserted on appeal of the approval of the original limited fund settlement played a limited role in securing reversal of that order. (Rec. Doc. 249 at 14-18). Further, Liaison Counsel argue the impact of removing the "enhanced costs" provision in terms of the ultimate approval of the second limited fund settlement is speculative at best. (Rec. Doc. 249 at 14-18).

Finally, and in the alternative, Liaison Counsel argue that should the Sims Plaintiffs be entitled to file an application for common benefit, costs, and/or fees, they should be limited to costs only, which should further be reduced in the same manner as were such items for Liaison Counsel. (Rec. Doc. 249 at 18).

## V. RULE 60 STANDARD

Fed. R. Civ. P. 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

>    (4) the judgment is void;
>
>    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>    (6) any other reason that justifies relief.[3]

Pertinent at present are Rules 60(b)(1) and 60(b)(6).

**VI. DISCUSSION**

The decision "to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court." *Hesling v. CSX Transpo., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005). "The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Id.* (internal citations omitted). The Fifth Circuit has identified eight factors that should inform a district court's consideration of a motion under Rule 60(b):

>    (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in

---

[3] The Court notes that Fed. R. Civ. P. 60(a) allows the Court to correct a clerical mistake or a mistake arising from oversight or omission, on motion or *sua sponte*; however, neither party argues this standard applies under present circumstances.

10

> the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981). As noted above, the Sims Plaintiffs argue for relief under either the "excusable neglect" standard of Rule 60(b)(1) or the "any other reason that justifies relief" standard of Rule 60(b)(6). (See Rec. Doc. 253 at 2). Thus, as a preliminary matter, it is necessary to distinguish between the grounds warranting relief under each standard. This distinction was addressed by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'Ship*, as follows:

> . . . Rule 60(b)(1), . . . permits courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect," but only on motion made within one year of the judgment. Rule 60(b)(6) goes further, however, and empowers the court to reopen a judgment even after one year has passed for "any other reason justifying relief from the operation of the judgment." These provisions are mutually exclusive, and thus a party who failed to take timely action due to "excusable neglect" may not seek relief more than a year after the judgment by resorting to subsection (6).

> *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, and n. 11, 108 S.Ct. 2194, 2205 n. 11, 100 L.Ed.2d 855 (1988). To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. See *ibid.; Ackerman v. United States,* 340 U.S. 193, 197–200, 71 S.Ct. 209, 211–213, 95 L.Ed. 207 (1950); *Klapprott v. United States,* 335 U.S. 601, 613–614, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.

507 U.S. 380, 393, 113 S. Ct. 1489, 1497, 123 L. Ed. 2d 74 (1993). In light of the foregoing, in order to invoke Rule 60(b)(6) for purposes of vacating the Court's prior order, the Sims Plaintiffs would need to show extraordinary circumstances and that they were faultless in the delay. As Mr. Irvin's declaration plainly reveals, he was on notice prior to Liaison Counsel's filing of their Motion for Award of Costs that he was not receiving CM/ECF notifications from the *Vodanovich* docket. (See Rec. Doc. 253-1 at 1)("Following the transfer of the *Katrina Canal Breaches* litigation to the *Vodanovich* docket (05-4191) I stopped receiving regular notifications of docket entries. Thereafter I periodically checked the docket to see if any relevant entries had been made. . . . I thus became aware of the judgment approving the second limited fund class action settlement (Doc. 216) entered following the remand from the Fifth Circuit and its reversal the judgment [sic] approving the

12

initial settlement."). Rather than contact the Clerk of this Court to resolve the notification issue, Mr. Irvin instead elected to "periodically check" the docket for "relevant entries." The Fifth Circuit has "pointedly announced that a party has a duty of diligence to inquire about the status of a case, and that Rule 60(b) relief will be afforded only in 'unique circumstances.'" *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993). Moreover, "clients must be held accountable for the acts or omissions of their attorneys." *Pioneer*, *supra*, 507 U.S. at 396. Accordingly, even assuming the Sims Plaintiffs could establish the "extraordinary circumstances" necessary to invoke Rule 60(b)(6) in the first instance, they are unable to show that their delay in obtaining notice of the disputed filings herein was "faultless." They are precluded from seeking relief under Rule 60(b)(6) in the present circumstances.

In light of the foregoing, the sole issue before the Court is whether the Sims Plaintiffs' failure to timely oppose Liaison Counsel's Motion for Award of Costs (Rec. Doc. 227), or to move for vacatur of the order granting that motion prior to entry of final judgment (Rec. Docs. 230, 231), or further to oppose the subsequent Motion for Payment of Non-Taxable Litigation Costs (Rec. Doc. 232) (the granting of which ultimately released the

disputed funds), are attributable to "excusable neglect" under Rule 60(b)(1).

In *Pioneer*, *supra*, the Supreme Court stated that the determination of whether a party's neglect was "excusable" "is at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission." 507 U.S. at 395.[4] These include, "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

As to the first factor, Liaison Counsel argue they have been prejudiced by the delay in payment interposed since the Court's original order granting release of the funds (Rec. Doc. 242). "However, the mere possibility of prejudice from delay, which is inherent in every case, is insufficient to require denial of a 60(b)(1) motion," rendering this argument unpersuasive. *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985).

As to the length of the delay and the potential impact on judicial proceedings, the delay at issue is significant.

---

[4] The Court notes that the Supreme Court was considering the issue specifically within the context of Bankruptcy Rule 9006(b)(1). Nevertheless, the Court looked to cases interpreting Fed. R. Civ. P. 60(b)(1), which applies the same "excusable neglect" standard, in reaching its decision and the analysis is persuasive, if not controlling, here.

14

Although Mr. Irvin claims he was not aware of the Court's order granting Liaison Counsel's Motion for Payment of Non-Taxable Litigation Costs until the week of December 15, 2014, Liaison Counsel's initial Motion for Award of Costs (which concerned the $3,500,000.00 presently at issue) was filed on October 13, 2014, noticed for submission on October 29, 2014, and granted by the Court on October 30, 2014, with a final judgment reflecting the same entered November 3, 2014. Thus, by October 30, 2014 at the latest, the record reflected that the funds against which Mr. Irvin allegedly intended to make a claim were subject of a competing claim by, and in preparation for distribution to, Liaison Counsel. Between that date and the Sims Plaintiffs' instant motion, more than two months elapsed. Further, the impact on judicial proceedings is not insubstantial, particularly in light of the interest in finality of judgments, given that granting the Sims Plaintiffs' motion would not only require vacting the Court's final judgment but further re-opening the application process for awards of common benefit and costs, which, given the opposition by Liaison Counsel, will doubtless trigger litigation over the Sims Plaintiffs' entitlement to such award and the amount thereof, if any. This would undo the considerable progress that has been made toward final resolution of this protracted 2005-filed litigation. Thus,

the Court finds that this factor weighs against granting relief under Rule 60(b)(1).

As to the reason for the delay, including whether it was within the reasonable control of the movant, the Court concludes that it most decidedly was. Although Mr. Irvin may have had no control over his initial alleged deletion from the *Vodanovich* docket, it was well within his power to contact the Clerk of Court to rectify the CM/ECF notice issue when there is no dispute that Mr. Irvin had actual knowledge of this issue. Further, Mr. Irvin is subject to a duty to monitor and keep himself apprised of the docket activity in the cases in which his clients are parties. *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993). Mr. Irvin avers in his declaration that the Sims Plaintiffs intended to file a claim for common benefit, costs, and/or fees all along; they therefore had every incentive to diligently monitor the *Vodanovich* docket, which they acknowledge understanding as the forum for any such claims. As noted above, Mr. Irvin appears to have either ignored docket activity or failed to monitor the docket for the two-month period between Liaison Counsel's Motion for Award of Costs (Rec. Doc. 227) and the Court's granting of that award. The sole colorable assertion in the Sims Plaintiffs' argument is that language in the Court's final judgment

approving the second limited settlement fund (Rec. Doc. 216), which indicated that a deadline for filing of common benefit applications would be fixed at some point following recognition of the effective date of settlement, caused Mr. Irvin to be on the lookout for such deadline and, presumably, to overlook the various intervening filings. The Court finds this argument unpersuasive. If Mr. Irvin were properly monitoring the docket for evidence that such a deadline had been fixed, he could not plausibly have overlooked the various filings relating to awards of costs filed by Liaison Counsel in the interim. He further ought to have noticed the dispute unfolding between Liaison Counsel and Daniel E. Becnel, Jr. to the contested $50,000.00 in funds, which would have put the Sims Plaintiffs on notice that the time for disputing disbursal of funds was at hand. At the very least, he would have been on notice that other parties were filing applications for costs and awards (whether or not a deadline subsequent to which such claims would be disallowed had been fixed).[5] Accordingly, the Court concludes that the delay was

---

[5] The ultimate release of funds to Liaison Counsel was the product of: (1) A Motion for Award of Costs filed October 13, 2014 (Rec. Doc. 227); an order by the Court granting that Motion (Rec. Doc. 230) on October 30, 2014; a Final Judgment reflecting the terms of the prior order entered on November 3, 2014 (Rec. Doc. 231); a subsequent Motion for Payment of Non-Taxable Litigation Costs (which sought the actual release of the approved funds) on December 1, 2014 (Rec. Doc. 232); and an order of the Court granting that Motion in part on December 12, 2014 (Rec. Doc. 242). In other words, even disregarding the various filings related to the disputed $50,000.00, at least four record entries during the course of the period from mid-October to mid-December ought to have put the Sims Plaintiffs on notice of the competing claims to the funds.

within the reasonable control of the Sims Plaintiffs and that the reason therefor weighs against relief under Rule 60(b)(1).

As to the final factor, there is no suggestion that the Sims Plaintiffs or Mr. Irvin acted in bad faith. There is instead, every indication that Mr. Irvin acted with neglect. Such neglect, unfortunately for the Sims Plaintiffs however, cannot properly be said to have been "excusable" within the context of the instant motion and for purposes of relief under Rule 60(b)(1).

## VII. CONCLUSION

The Sims Plaintiffs have failed to show entitlement to relief under either Rule 60(b)(1) or 60(b)(6) for purposes of their Motion to Vacate. Accordingly,

**IT IS ORDERED** that their Motion (Rec. Doc. 246) is **DENIED.**

New Orleans, Louisiana, this 25th day of February, 2015.

_____
UNITED STATES DISTRICT JUDGE